# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ESTATE OF JESSE AGUIRRE, | § | |
| DECEASED, BLANCA AGUIRRE, | § | |
| INDIVIDUALLY AND AS NEXT | § | |
| FRIEND OF JESSE AGUIRRE, JR., | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | SA-15-CV-00371-DAE |
| | § | |
| CITY OF SAN ANTONIO; | § | |
| OFFICER CRISTINA GONZALES, | § | |
| OFFICER ROBERTO MENDEZ, | § | |
| OFFICER JENNIFER MORGAN, | § | |
| OFFICER BETTINA ARREDONDO, | § | |
| AND OFFICER BENITO JUAREZ | § | |
| *Defendants* | § | |

## AMENDED APPENDIX TO PLAINTIFFS' COMBNED RESPONSES IN OPPOSITION TO DEFENDANTS CITY OF SAN ANTONIO [DOCKET 52], OFFICER CRISTINA GONZALES, OFFICER ROBERTO MENDEZ, OFFICER JENNIFER MORGAN, OFFICER BETTINA ARREDONDO, AND OFFICER BENITO JUAREZ'S [DOCKET 54] MOTIONS FOR SUMMARY JUDGEMENT

## I. STATEMENT OF EXHIBITS

In support of Plaintiffs' Responses in Opposition to Defendants' Motions for Summary Judgment, Plaintiffs have attached hereto and incorporated herein for all purposes, the following summary judgment evidence:

### PLAINTIFFS' EXHIBITS TO COMBINED RESPONSES TO DEFEDANTS' MOTIONS FOR SUMMARY JUDGMENT [DOCKET NUMBERS 52 AND 54]

Exhibit 1   Dash Cam Video of Cristina Gonzales (Relying on Defendants' Exhibit F-1);

Exhibit 2   Dash Cam Video of Douglas Greene (Designated as Plaintiffs' Exhibit "I" and mailed to Court on January 9, 2017 on DVD and USB drive);

Exhibit 3        Application for Administration of the Estate of Jesse Aguirre;

Exhibit 4        SAPD General Manual Procedure 601.07A; 10B, 14, *et seq.*;

Exhibit 5        U.S. Department of Justice Bulletin - Positional Asphyxia - Sudden Death;

Exhibit 6        SAPD General Manual Procedure 601.05E;

Exhibit 7        Deposition of Dr. Brant Mittler;

Exhibit "A"      Deposition Transcript of Tania Hernandez;

Exhibit "B"      Deposition Transcript of Officer Cristina Gonzales;

Exhibit "C"      Custodial death report submitted to the Texas Attorney General by Detective Randal Hines Aguirre-IA file [pp. 142-148; 167] produced by Defendants in their Initial Disclosures;

Exhibit "D"      Sworn statement of Officer Jennifer Morgan from Aguirre-IA file [p. 90-92] produced by Defendants in their Initial Disclosures.

Exhibit "E"      Sworn statement of Officer Roberto Mendez from Aguirre-IA file [p. 93-94] produced by Defendants in their Initial Disclosures.

Exhibit "F"      Sworn statement of Officer Christina Gonzales from Aguirre-IA file [p. 95-98] produced by Defendants in their Initial Disclosures.

Exhibit "G"      Sworn statement of Officer Bettina Arredondo from Aguirre-IA file [p. 99-101] produced by Defendants in their Initial Disclosures.

Exhibit "H"      Deposition Transcript of Officer Jennifer Morgan;

Exhibit "I"      Video Recording from the vehicle of Officer Douglas Greene produced by Defendants in their Initial Disclosures as Disc 6 of 18;

Exhibit "J"      Deposition Transcript of Officer Bettina Arredondo;

Exhibit "K"      Deposition Transcript of Officer Dezi Rios – Corporate Representative for the City of San Antonio on tactical medical issues;

Exhibit "L"      EMS Patient Care Report produced by Defendants in their Initial Disclosures as Aguirre-EMS Reports;

Exhibit "M"      Deposition Transcript of Officer Jon Sabo – Corporate Representative for

the City of San Antonio on excited delirium;

Exhibit "N"     Plaintiffs' Expert Report of Brant Mittler, M.D.

Exhibit "O"     Plaintiffs' Expert Report of Lance Platt, Ph.D.

Additionally, Plaintiffs rely on many of Defendants' Exhibits attached and/or submitted to the Motions for Summary Judgment.   When Plaintiffs refer to one or more of Defendants' Exhibits the corresponding footnote will reference the Exhibit as "*Defendants'* Exhibit "X" ("X" being the letter used by Defendants to designate the specific Exhibit).

## II.   THE "ACTUAL" VERSION AND FACTS OMITTED OR MISCHARACTERIZED IN "DEFENDANTS' VERSION"

### A. The Initial Accident

"Defendants' Version" asserts that "Martinez stated the car was going toward people and she didn't want to hurt anyone so she put it in park."[1] "Defendants' Version" omits specific facts which mischaracterizes the evidence. Dominique Martinez (hereinafter "Martinez") also stated that "All of the tires were flat and the car was damaged bad enough that I couldn't get the car to go anywhere"[2] Additionally, Tania Hernandez (hereinafter "Hernandez") who actually witnessed the movement of the vehicle Jesse Aguirre was operating testified to the fact that the vehicle was moving at a very slow rate of speed which she estimated at two (2) miles per hour.[3] Further, Hernandez stated that the vehicle was struggling to move at all and the vehicle only moved a short distance during the time Hernandez observed the vehicle.[4]

"Defendants' Version" cites Hernandez's deposition testimony in which she *thought* the

1 Docket No. 52-1 citing Docket No. 52-2, Defendants' Exhibit "A-1", p. 2.
2 *Id.*
3 Exhibit "A", p. 23, lines 15-16.
4 *Id* at p. 16, lines 9-16 and 22-25; p. 17, lines 1-10; and p. 23, lines 21-24.

vehicle was going to crash into her (emphasis added).[5] Curiously Defendants fail to cite Hernandez's complete answer in which she states that her *thought* immediately changed because she observed the vehicle having trouble even moving (emphasis added).[6] "Defendants' Version" also cites Hernandez's deposition testimony in which she again *thought* Jesse Aguirre was going to run towards her (emphasis added).[7] Again "Defendants' Version" omits Hernandez's testimony in which she explains that Jesse Aguirre never *actually* ran towards her or her family nor did he make any threats as Jesse Aguirre left in the opposite direction of Hernandez. In fact, Hernandez was comfortable enough to run after Jesse Aguirre to keep him in her sight (emphasis added).[8]

### B. The Officers' Response

#### 1. <u>Officer Bettina Arredondo (hereinafter "Arredondo")</u>

"Defendants' Version" asserts that Arredondo received a call for an accident where a male fled the scene.[9] For purposes of clarification Jesse Aguirre left the scene on *foot* and not in a motor vehicle.[10]

#### 2. <u>Officer Jennifer Morgan (hereinafter "Morgan")</u>

"Defendants' Version" asserts that Jesse Aguirre walked forward and away from Morgan's vehicle.[11] For purposes of clarification Morgan's vehicle was positioned in the median area of Highway 90 (Eastbound) close to the Zarzamora exit which was right of the far right lane of Highway 90 while Jesse Aguirre was in the shoulder area left of the far left lane of Highway 90

---

5 *Id* at p. 16, lines 10-12 and Docket No. 52-1 citing Docket No. 52-3, Defendants' Exhibit "B" at p. 16, lines 10-12.
6 *Id* at p. 16, lines 13-16.
7 *Id* at p. 38, lines 8-9.
8 *Id* at p. 33, lines 23-25; p. 34, lines 1-9; p. 37, lines 22-25; p. 28, lines 1-9; and p. 43, lines 22-25.
9 Docket No. 52-1 citing Docket No. 52-5, Defendants' Exhibit "D" at p. 1.
10 *Id* at p. 2.
11 Docket No. 52-1 citing Docket No. 52-6, Defendants' Exhibit "E" at p. 2.

when she observed Jesse Aguirre move away from her vehicle and Morgan's vehicle was not directly behind Jesse Aguirre and was actually four (4) lanes of traffic away from him.[12] This can be seen on the video recorded from Morgan's vehicle at 7:19:19 p.m. (5:08 minutes into the recording).[13] Additionally, "Defendants' Version" acknowledges that as Morgan made her way across the four lanes of traffic Jesse Aguirre actually walked towards the direction of Morgan's vehicle.[14]

"Defendants' Version" states that Morgan witnessed Jesse Aguirre step into the fast lane of traffic forcing a black car traveling in the fast lane to swerve to avoid hitting Jesse Aguirre.[15] This is an **outright fabrication**. The video recording from Morgan's vehicle shows that Jesse Aguirre stepped back into the shoulder area by the barrier that divides the east and westbound lanes of Highway 90 and that the black car did *not* swerve at all to avoid hitting Jesse Aguirre.[16] This can be seen on the video recorded from Morgan's vehicle from 7:19:11 p.m. through 7:19:16 p.m. (5:00 minutes through 5:05 minutes and five (5) seconds into the recording).[17]

**3. Officer Cristina Gonzales (hereinafter "Gonzales")** "Defendants' Version" asserts that Gonzales thought Arredondo was in trouble.[18] For purposes of clarification Gonzales testified that the *background* noise on her radio sounded like *the highway or that she [Arredondo] was in trouble* and further testified that she didn't know and that Arredondo did *not* actually *say anything to indicate she was in trouble* (emphasis added).[19] Furthermore, "Defendants' Version" acknowledges that Gonzales shortly after heard Arredondo report that she

12 *Id* at p. 3 and Defendants' Exhibit "E-1" at 7:19:19 p.m. (5:08 minutes into the video recording).
13 Defendants' Exhibit "E-1" at 7:19:19 p.m. (5:08 minutes into the video recording).
14 Docket No. 52-1 citing Docket No. 52-6, Defendants' Exhibit "E" at p. 3.
15 *Id.*
16 Defendants' Exhibit "E-1" at 7:19:11 p.m. through 7:19:16 p.m. (5:00 minutes through 5:05 minutes into the video recording).
17 *Id.*

was *not in trouble* (emphasis added).20

### C. The Apprehension

### 1. <u>Initial Contact and Detention</u>

"Defendants' Version" states that Gonzales yelled commands at Jesse Aguirre. 21 "Defendants' Version" avoids providing the context of Gonzales' "commands" which illustrate that what she yelled was really a death threat; specifically, Gonzales pulls her gun, aims at Jesse Aguirre and yells, "***Stop! Come here mother fucker or I will shoot you!***"22 This can be seen and heard on the video recorded from Gonzales' vehicle from 7:19:44 p.m. through 7:20:05 p.m. (3:40 minutes through 4:01 minutes into the recording).23 Furthermore, "Defendants' Version" asserts that Jesse Aguirre crossed over the barrier at the median *after* Morgan, Gonzales, and Officer Roberto Mendez (hereinafter "Mendez") reached the location where Jesse Aguirre was walking.24 The evidence instead shows that Jesse Aguirre had already crossed the barrier at the median prior to Morgan, Gonzales, and Mendez arriving at the location Jesse Aguirre was walking.25 This can be seen on the video recorded from Gonzales' vehicle from 7:19:36 p.m. through 7:19:44 p.m. (3:32 minutes through 3:40 minutes into the recording).26

"Defendants' Version" next states that Jesse Aguirre initially refused to comply with the

---

18 Docket No. 52-1 citing Docket No. 52-7, Defendants' Exhibit "F" at p. 2.
19 Exhibit "B" at p. 23, lines 15-25; and p. 24, lines 1-8.
20 Docket No. 52-1 citing Docket No. 52-7, Defendants' Exhibit "F" at p. 2
21 *Id* at p. 3.
22 Defendants' Exhibit "F-1" at 7:19:44 p.m. through 7:20:05 p.m. (3:40 minutes through 4:01 minutes into the video recording).
23 *Id.*
24 Docket No. 52-1 citing Docket No. 52-6, Defendants' Exhibit "E" at p. 3; Docket No. 52-7, Defendants' Exhibit "F" at p. 3; and Docket No. 52-8, Defendants' Exhibit "G" at p. 2.
25 Defendants' Exhibit "F-1" at 7:19:36 p.m. through 7:19:44 p.m. (3:32 minutes through 3:40 minutes into the video recording).
26 *Id.*

commands of Morgan, Gonzales, and Mendez.[27]  In reality Jesse Aguirre, immediately complied with their commands, stopped walking and put his hands on the barrier at the median approximately eighteen (18) seconds after receiving the first command.[28]  This can be seen on the video recorded from Gonzales' vehicle from 7:19:47 p.m. through 7:20:05 p.m. (3:43 minutes through 4:01 minutes into the recording).[29]

### 2. <u>Front Hood of Mendez's Vehicle</u>

"Defendants' Version" asserts that as Morgan, Gonzales, and Mendez were moving Jesse Aguirre to the front of Mendez's vehicle that Jess Aguirre resisted by moving side-to-side which made it difficult to walk and to control Jesse Aguirre.[30]  This assertion is an **outright misrepresentation** as Jesse Aguirre did not move side-to-side and it was not difficult for Morgan, Gonzales, and Mendez to move or control Jesse Aguirre as they walked him to Mendez's patrol car in a matter of approximately ten (10) seconds without issue.[31]  This is clearly reflected on the video recorded from Gonzales' vehicle from 7:20:29 p.m. through 7:20:39 p.m. (4:26 minutes through 4:36 minutes into the recording).[32]

Next, "Defendants' Version" states that because of the dangerous traffic around them Gonzales informed the supervisor they were going to get to a safer location so EMS could check on Jesse Aguirre.[33]  Highway traffic can create a dangerous situation but Jesse Aguirre was taken to the driver's side of Mendez's vehicle and not the passenger's side where they would have been

---

27  Docket No. 52-1 citing Docket No. 52-7, Defendants' Exhibit "F" at p. 3

28  Defendants' Exhibit "F-1" at 7:19:47 p.m. through 7:20:05 p.m. (3:43 minutes through 4:01 minutes into the video recording).

29  *Id.*

30  Docket No. 52-1 citing Docket No. 52-6, Defendants' Exhibit "E" at p. 4; and Docket No. 52-8, Defendants' Exhibit "G" at p. 3.

31  Defendants' Exhibit "F-1" at 7:20:29 p.m. through 7:20:39 p.m. (4:26 minutes through 4:36 minutes into the video recording).

32  *Id.*

exposed to traffic. Moreover, the vehicles of Gonzales and Mendez blocked traffic from traveling in far left lane of Highway 90 while Morgan's vehicle blocked traffic from traveling in the Eastbound lane immediately to the right of the far left lane of Highway 90 providing everyone two lanes of safety from traffic.[34] Further, it is crystal clear that the traffic traveling on Highway 90 was moving extremely slow because of the position the officers' vehicles were parked alleviating the danger from the situation.[35] This can be viewed throughout the duration of the video recorded from Gonzales' vehicle after Morgan, Gonzales, and Mendez park and exit their vehicles but as an example this can be viewed from 7:20:29 p.m. through 7:20:47 p.m. (4:26 minutes through 4:44 minutes into the recording).[36] Furthermore, the video recording demonstrates a large number of additional officers arriving and at multiple times the recording shows the officers laughing and joking and carrying on as if they were at a back yard barbeque. This betrays that the defendants were never in any danger - - certainly not from Jesse Aguirre.[37; 38] This can be viewed and/or heard on the video recorded from Gonzales' vehicle from 7:25:53 p.m. through 7:26:11 p.m. (9:51 minutes through 10:09 minutes into the video recording), from 7:27:51 p.m. through 7:28:13 p.m. (11:49 minutes through 12:11 minutes into the video recording), and from 7:28:54 p.m. through 7:29:01 p.m. (12:52 minutes through 12:59 minutes into the video recording); and heard on the video recorded from Morgan's vehicle from

---

33 Docket No. 52-1 citing Docket No. 52-7, Defendants' Exhibit "F" at p. 4.

34 Defendants' Exhibit "F-1" at 7:20:29 p.m. through 7:20:47 p.m. (4:26 minutes through 4:44 minutes into the video recording)(additionally this can be viewed through the duration of the video recording).

35 *Id.*

36 *Id.*

37 Defendants' Exhibit "F-1" at 7:25:53 p.m. through 7:26:11 p.m. (9:51 minutes through 10:09 minutes into the video recording); at 7:27:51 p.m. through 7:28:13 p.m. (11:49 minutes through 12:11 minutes into the video recording); and at 7:28:54 p.m. through 7:29:01 p.m. (12:52 minutes through 12:59 minutes into the video recording).

38 Defendants' Exhibit "E-1" at 7:25:42 p.m. through 7:25:57 p.m. (11:37 minutes through 11:52 minutes into the video recording); at 7:26:16 p.m. through 7:26:45 p.m. (12:11 minutes through 12:40 minutes into the video recording); and at 7:27:14 p.m. through 7:27:30 p.m. (13:10 minutes through 13:25 minutes into the video

7:25:42 p.m. through 7:25:57 p.m. (11:37 minutes through 11:52 minutes into the video recording), from 7:26:16 p.m. through 7:26:45 p.m. (12:11 minutes through 12:40 minutes into the video recording), and from 7:27:14 p.m. through 7:27:30 p.m. (13:10 minutes through 13:25 minutes into the video recording).39

"Defendants' Version" claims that while Jesse Aguirre was smashed against the hood of Mendez's vehicle he would not stay still and was moving his upper body *aggressively* and *seemed* to be *moving away* from the officers (emphasis added).[40] This is not accurate. The video shows Jesse Aguirre does *not* move his upper body aggressively nor does he move his upper body in any other manner as this is not possible because the officers have Jesse Aguirre's upper body smashed against Mendez's vehicle by the force, pressure, and weight of the officers.41 Further, Jesse Aguirre **never** moves away from the officers and clearly this would be impossible because he had his hands cuffed behind his back then was bent over at this waist face down on the hood of Mendez's patrol vehicle.[42] This can be seen on the video recorded from Gonzales' vehicle from 7:20:39 p.m. through 7:22:23 p.m. (4:36 minutes through 6:20 minutes into the recording).[43]

"Defendants' Version" next states that Jesse Aguirre had one of legs behind him and braced as through he was *trying to gain leverage* to *attempt* to *push off against the officers* and *attempt to escape, or physically engage them in some way* (emphasis added).[44] Once again, Jesse Aguirre had his legs behind his body as this is the only possible position his legs could be in as

---

39 *Id.*
40 Docket No. 52-1 citing Docket No. 52-7, Defendants' Exhibit "F" at p. 4.
41 Defendants' Exhibit "F-1" at 7:20:39 p.m. through 7:22:23 p.m. (4:36 minutes through 6:20 minutes into the video recording).
42 *Id.*
43 *Id.*
44 Docket No. 52-1 citing Docket No. 52-6, Defendants' Exhibit "E" at p. 4.

his body was smashed forward and against the hood of Mendez's vehicle.[45] Jesse Aguirre did have his left leg further behind his right leg at two points during the time he was smashed against the hood of Mendez's vehicle but his left leg was in a slumped, knee bent position illustrating he was having difficulty balancing or evening standing and not extended in a manner that would exert pressure to brace himself in an attempt to escape.[46] This is consistent with Morgan's testimony prior to her contact with Jesse Aguirre in which she said she observed Jesse Aguirre having difficulty walking, stumbling, and required the use of the barrier at the median to maintain his balance.[47] Further, Jesse Aguirre never demonstrated any inclination to attempt to escape or that he was going to physically engage the officers and he *never actually attempted* to do so.[48] This can be viewed on the video recorded from Gonzales' vehicle from 7:20:39 p.m. through 7:22:23 p.m. (4:36 minutes through 6:20 minutes into the recording).[49]

### 3. <u>The Takedown of Jesse Aguirre</u>

"Defendants' Version" states that because of Jesse Aguirre's continued resistance and failure to comply the officers were *forced* to take Jesse Aguirre to the ground to gain control of him and prevent him from running into traffic. There is absolutely no rational basis for this statement, it is a fabrication. Defendants further assert that because of this they could not safely transport Jesse Aguirre in a patrol vehicle (emphasis added).[50] This is an **outright misrepresentation** as Jesse Aguirre complied with the officers and stopped walking and put his hands on the barrier at the median approximately eighteen (18) seconds after receiving the first

---

45 Defendants' Exhibit "F-1" at 7:20:39 p.m. through 7:22:23 p.m. (4:36 minutes through 6:20 minutes into the video recording).
46 *Id.*
47 Id; and Docket No. 52-1 citing Docket No. 52-6, Defendants' Exhibit "E" at p. 2.
48 Defendants' Exhibit "F-1" at 7:20:39 p.m. through 7:22:23 p.m. (4:36 minutes through 6:20 minutes into the video recording).
49 *Id.*

command from the officers.[51] Further, Jesse Aguirre did *not* move side-to-side and it was not difficult for Morgan, Gonzales, and Mendez to move or control Jesse Aguirre as they walked him to Mendez's patrol car in a matter of approximately ten (10) seconds without issue.[52] Jesse Aguirre does *not* move his upper body aggressively nor does he move his upper body in any manner and this is *not* possible as the officers have Jesse Aguirre's upper body smashed against Mendez's vehicle by the force, pressure, and weight of the officers.[53] Jesse Aguirre *never* showed any inclination to attempt to escape or to physically engage the five (5) officers. Defendants were in complete and total control - - Jesse Aguirre was in their custody and under their control.[54] Moreover, evidencing the fact that the officers had *complete control* of Jesse Aguirre prior to forcing his takedown, the officers had placed Jesse Aguirre in handcuffs behind his back approximately twenty nine (29) seconds from the time they gave their first command to Jesse Aguirre.[55] Further, supporting the officers' *complete control* over Jesse Aguirre is the fact that when Jesse Aguirre was taken to the front hood of Mendez's vehicle there was three (3) officers present and in the approximately next nineteen (19) seconds two (2) additional officers arrived for a total of five (5) officers now smashing Jesse Aguirre against the hood of Mendez's vehicle with Jesse Aguirre's hands cuffed behind his back.[56] As an example of how much control the officers had over Jesse Aguirre and further supporting that he was not at all a threat to escape or physically engage them is the fact that ***Mendez felt comfortable enough to adjust his***

---

50 Docket No. 52-1 citing Docket No. 52-6, Defendants' Exhibit "E" at p. 4; Docket No. 52-7, Defendants' Exhibit "F" at p. 4; and Docket No. 52-8, Defendants' Exhibit "G" at pp. 3-4.
51 Defendants' Exhibit "F-1" at 7:19:47 p.m. through 7:20:05 p.m. (3:43 minutes through 4:01 minutes into the video recording).
52 *Id* at 7:20:29 p.m. through 7:20:39 p.m. (4:26 minutes through 4:36 minutes into the video recording).
53 *Id* at 7:20:39 p.m. through 7:22:23 p.m. (4:36 minutes through 6:20 minutes into the video recording).
54 *Id*.
55 *Id*. at 7:19:47 p.m. through 7:20:16 PM (3:43 minutes through 4:12 minutes into the video recording).
56 *Id* at 7:20:39 p.m. through 7:20:58 p.m. (4:36 minutes through 4:55 minutes into the video recording).

*sunglasses*.[57] Gonzales again muted her microphone to engage in an off the record conversation with Morgan and Arredondo,[58] and Gonzales, Morgan, and Arredondo not being needed to continue to assist in smashing Jesse Aguirre against the hood of Mendez's vehicle until the officers decide to proceed with a takedown of Jesse Aguirre.[59] Finally, the only aggressive or forceful conduct until the takedown of Jesse Aguirre is by Mendez who aggressively kicks Jesse Aguirre[60] and all of the officers' rough treatment of Jesse Aguirre as if they were tossing around a ragdoll instead of a human being.[61]

Additionally, "Defendants' Version" asserts that Jesse Aguirre could not be safely transported from the scene in a patrol vehicle because of the *possibility* Jesse Aguirre could break or kick out a window and *hurt himself*.[62] Although in theory *anything* is *possible*, Jesse Aguirre simply did not present any propensity for doing so as he complied with the officers, there was three (3) to five (5) total officers present in the short timeframe from the officers' first command to Jesse Aguirre until they decided to utilize a takedown, Morgan, Gonzales, and Arredondo engaged in conversation away from Mendez's vehicle, and Jesse Aguirre had his hands cuffed behind his back for the majority of the interaction.[63]

### 4. The Final Moments of Jesse Aguirre's Life

*i. Jesse Aguirre's Multiple Cries in Agony*

"Defendants' Version" that once the officers completed their (completely unnecessary)

---

57 *Id* at 7:21:11 p.m. through 7:21:16 p.m. (5:08 minutes through 5:13 minutes into the video recording).
58 *Id* at 7:21:51 p.m. through 7:22:09 p.m. (5:48 minutes through 6:06 minutes into the video recording).
59 *Id* at 7:20:58 p.m. through 7:22:23 p.m. (4:55 minutes through 6:20 minutes into the video recording).
60 *Id* at 7:20:39 p.m. through 7:20:42 p.m. (4:36 minutes through 4:39 minutes into the video recording); and at 7:22:01 p.m. through 7:22:09 p.m. (5:58 minutes through 6:06 minutes into the video recording).
61 *Id* at 7:19:47 p.m. through 7:22:28 PM (3:43 minutes through 6:25 minutes into the video recording).
62 Docket No. 52-1 citing Docket No. 52-6, Defendants' Exhibit "E" at p. 4; Docket No. 52-7, Defendants' Exhibit "F" at p. 4; and Docket No. 52-8, Defendants' Exhibit "G" at p. 3.
63 Defendants' Exhibit "F-1" at 7:19:47 p.m. through 7:22:28 p.m. (3:43 minutes through 6:25 minutes into the video recording).

takedown of Jesse Aguirre he began jerking his head from side to side, and bobbing up and down and he then continued moving his head back and forth on the roadway scratching his face.[64] In reality, the takedown of Jesse Aguirre smashed his head, face first into the concrete pavement causing Jesse Aguirre to endure extreme pain which is evidenced by his screams in agony.[65] When Jesse Aguirre moves his head to the left, the only logical conclusion is Jesse Aguirre is simply trying to breathe and is extreme pain alleviate the pain due to the forceful restraint the officers put Jesse Aguirre in.[66] In fact, the first thing heard when Gonzales finally decides to unmute her microphone is Jesse Aguirre cry in agony followed shortly by another cry.[67] Furthermore, Morgan unmutes her microphone shortly before Gonzales and when she does so you can hear another cry of agony from Jesse Aguirre followed by multiple additional cries.[68]

   *ii. The Manual Hog-Tying of Jesse Aguirre*

   "Defendants' Version" states that Jesse Aguirre was also kicking his feet and trying to swing his legs in an attempt to gain leverage to get up.[69] This is yet another **outright misrepresentation** of the evidence and an absolutely ridiculous assertion as Jesse Aguirre did not kick or move his legs in any way as this was not even possible because Jesse Aguirre's legs were bent back towards his back and sat on by Gonzales with the entire weight and force of her body immediately after Jesse Aguirre was smashed into the concrete pavement.[70] Further,

---

64 Docket No. 52-1 citing Docket No. 52-5, Defendants' Exhibit "D" at p. 3; citing Docket No. 52-8, Defendants' Exhibit "G" at p. 4.
65 Defendants' Exhibit "F-1" at 7:22:28 p.m. through 7:23:39 p.m. (6:25 minutes through 7:36 minutes into the video recording).
66 *Id*.
67 *Id* at 7:23:42 p.m. through 7:23:52 p.m. (7:39 minutes through 7:49 minutes into the video recording).
68 Defendants' Exhibit "E-1" at 7:23:32 p.m. through 7:23:42 p.m. (9:24 minutes through 9:35 minutes into the video recording).
69 Docket No. 52-1 citing Docket No. 52-8, Defendants' Exhibit "G" at p. 4.
70 Defendants' Exhibit "F-1" at 7:22:25 p.m. through 7:22:33 p.m. (6:22 minutes through 6:30 minutes into the video recording).

Gonzales did not release Jesse Aguirre's legs from this position until Jesse Aguirre had died.[71] This is clearly reflected on the video recorded from Gonzales' vehicle from 7:22:25 p.m. through 7:27:51 p.m. (6:22 minutes through 11:49 minutes into the recording).[72]

 "Defendants' Version" next states that Mendez had his right knee on the lower side of Jesse Aguirre's back and was using his left hand to hold down Jesse Aguirre's left shoulder, while Mendez was also using his right hand to hold Jesse Aguirre's head down to prevent him from injuring himself.[73] This assertion that Mendez is trying to prevent Jesse Aguirre from injuring himself is simply ludicrous as discussed previously because when Jesse Aguirre moves his head to the left, the only logical conclusion is Jesse Aguirre is simply trying to breathe and is extreme pain alleviate the pain due to the forceful restraint the officers put Jesse Aguirre in.[74] Additionally, Mendez's did not just have his right knee on Jesse Aguirre's back was using the weight and force of his body to press Jesse Aguirre's body into the cement pavement.[75] Further, Mendez also pressed his left knee, utilizing the weight and force of his body, against Jesse Aguirre's upper left back and neck for part of the time while Jesse Aguirre was on the ground.[76] Mendez also pressed his left hand, utilizing the weight and force of his body, against Jesse Aguirre's upper left back and left shoulder area while at the same time was using his right hand to press Jesse Aguirre's face into the concrete pavement.[77] This can be witnessed on the video recorded from Gonzales' vehicle from 7:22:28 p.m. through 7:27:51 p.m. (6:25 minutes through

---

71 *Id* at 7:22:25 p.m. through 7:27:51 p.m. (6:22 minutes through 11:49 minutes into the video recording).
72 *Id.*
73 Docket No. 52-1 citing Docket No. 52-8, Defendants' Exhibit "G" at p. 4.
74 Defendants' Exhibit "F-1" at 7:22:28 p.m. through 7:23:39 p.m. (6:25 minutes through 7:36 minutes into the video recording).
75 *Id* at 7:22:28 p.m. through 7:27:51 p.m. (6:25 minutes through 11:49 minutes into the video recording).
76 *Id* at 7:23:18 p.m. through 7:23:39 p.m. (7:15 minutes through 7:36 minutes into the video recording).
77 *Id* at 7:22:28 p.m. through 7:27:51 p.m. (6:25 minutes through 11:49 minutes into the video recording).

11:49 minutes into the recording).[78]

"Defendants' Version" curiously **omits** the fact that Morgan also engaged in utilizing the weight and force of her body to exert pressure on Jesse Aguirre's buttocks and lower back after Jesse Aguirre is taken to the ground.[79] Further, "Defendants' Version" **omits** the fact that Morgan also used her right hand to press Jesse Aguirre's right back into the cement pavement.[80] This can be viewed on the video recorded from Gonzales' vehicle from 7:22:44 p.m. through 7:23:26 p.m. (6:41 minutes through 7:23 minutes into the video recording), from 7:23:34 p.m. through 7:24:50 p.m. (7:31 minutes through 8:40 minutes into the video recording), from 7:23:42 p.m. through 7:27:51 p.m. (7:39 minutes through 11:49 minutes into the video recording), and from 7:25:08 p.m. through 7:27:51 p.m. (9:05 minutes through 11:49 minutes into the video recording).[81]

Moreover, "Defendants' Version" also **omits** the fact that Arredondo also utilizes the weight and force of her body to press down Jesse Aguirre's right upper back into the ground with her left hand for part of the time Jesse Aguirre is on the concrete pavement.[82] This can be witnessed on the video recorded from Gonzales' vehicle from 7:23:42 p.m. through 7:24:23 p.m. (7:39 minutes through 8:21 minutes into the recording).[83]

"Defendants' Version" then asserts that Officer Benito Juarez (hereinafter "Juarez") witnessed Jesse Aguirre again resisting and trying to kick the officer [Gonzales] off his legs.[84] As previously discussed this is an **outright misrepresentation** of the evidence and an absolutely ridiculous assertion as Jesse Aguirre did not kick or move his legs in any way as this was not

---

78 *Id.*
79 *Id* at 7:22:44 p.m. through 7:23:26 p.m. (6:41 minutes through 7:23 minutes into the video recording); 7:23:34 p.m. through 7:24:50 p.m. (7:31 minutes through 8:40 minutes into the video recording); and 7:25:08 p.m. through 7:27:51 p.m. (9:05 minutes through 11:49 minutes into the video recording).
80 *Id* at 7:23:42 p.m. through 7:27:51 p.m. (7:39 minutes through 11:49 minutes into the video recording).
81 *Id.*
82 *Id* at 7:23:42 p.m. through 7:24:23 p.m. (7:39 minutes through 8:21 minutes into the video recording).

even possible because Jesse Aguirre's legs were bent back towards his back and sat on by Gonzales with the entire weight and force of her body immediately after Jesse Aguirre was smashed into the concrete pavement.[85] As previously discussed, Gonzales did not release Jesse Aguirre's legs from this position until Jesse Aguirre had died.[86]

"Defendants' Version" is littered with these misrepresentations and omissions which is unsurprising because it is consistent with the same misrepresentations and omissions presented in the San Antonio Police Department's investigation and custodial death report filed with the Texas Attorney General by Detective Randal Hines (signed off by Chief of Police W. McManus, Assistant Chief J. Banales, Deputy Chief J. MacKay, Captain A. Carian, Lieutenant C. Benavides, and Sergeant J. Cole)[87] as well as the sworn statements of Morgan, Gonzales, Mendez, and Arredondo[88] which as previously discussed are all contradicted by the video recordings, specifically from the vehicles of Morgan and Gonzales.[89] As an example of an egregious misrepresentation is the fact that in Detective Randal Hines' custodial death report and in Morgan's sworn statement they both assert that Jesse Aguirre was attempting to *head butt*[90] the officers which Jesse Aguirre never attempted to do and is completely contradicted by the

---

83 *Id*.

84 Docket No. 52-1 citing Docket No. 52-9, Defendants' Exhibit "H" at p. 2.

85 Defendants' Exhibit "F-1" at 7:22:25 p.m. through 7:22:33 p.m. (6:22 minutes through 6:30 minutes into the video recording).

86 *Id* at 7:22:25 p.m. through 7:27:51 p.m. (6:22 minutes through 11:49 minutes into the video recording).

87 Exhibit "C" (Custodial death report submitted to the Texas Attorney General by Detective Randal Hines from Aguirre-IA file produced by Defendants in their Initial Disclosures).

88 Exhibit "D" (Sworn statement of Officer Jennifer Morgan from Aguirre-IA file produced by Defendants in their Initial Disclosures), Exhibit "E" (Sworn statement of Officer Roberto Mendez from Aguirre-IA file produced by Defendants in their Initial Disclosures Officer Roberto Mendez), Exhibit "F" (Sworn statement of Officer Christina Gonzales from Aguirre-IA file produced by Defendants in their Initial Disclosures), and Exhibit "G" (Sworn statement of Officer Bettina Arredondo from Aguirre-IA file produced by Defendants in their Initial Disclosures).

89 Defendants' Exhibit "F-1" at 7:19:36 p.m. through 7:27:51 p.m. (3:32 minutes through 11:49 minutes into the video recording); and Defendants' Exhibit "E-1" at 7:19:19 p.m. through 7:27:30 p.m. (5:08 minutes through 13:25 minutes into the video recording).

90 Exhibit "C" (Custodial death report summary of how death occurred submitted to the Texas Attorney General by Detective Randal Hines) at p. 7; and Exhibit "D" at p. 2 (Sworn statement of Officer Jennifer Morgan).

video recording from Gonzales' vehicle (emphasis added).[91] In fact, even more amazing is the fact that Morgan's own testimony acknowledges that this *attempted phantom head butt* **never** actually occurred.[92]

### iii. Jesse Aguirre's Death

"Defendant's Version" states that Juarez, a tactical medic and licensed EMT ran to his vehicle to get his medical equipment back once he confirmed Jesse Aguirre was not breathing.[93] For purposes of clarification, Juarez did not run but instead sauntered over to his vehicle to retrieve his medical equipment.[94] Additionally, "Defendants' Version" simply **omits** the fact that Juarez takes his time retrieving his medical equipment, then starts to *walk* back to Jesse Aguirre, realizes he left something in his vehicle so he puts his medical equipment on the ground and retrieves something from his vehicle, and finally returns to pick his medical equipment back up and begins to again *walk* back to Jesse Aguirre.[95] This is clearly reflected on the video recorded from Officer Douglas Greene's vehicle from 7:27:50 p.m. through 7:28:48 p.m. (6:35 minutes through 7:33 minutes into the recording).[96] Juarez's lack of a sense of urgency in response to Jesse Aguirre, a human being, not breathing and being unresponsive and motionless is not surprising considering the fact that when he first realizes Jesse Aguirre is not breathing and goes to retrieve his medical equipment, Juarez has a big smile on his face.[97] This can be witnessed

---

91 Defendants' Exhibit "F-1" at 7:19:36 p.m. through 7:27:51 p.m. (3:32 minutes through 11:49 minutes into the video recording).

92 Exhibit "H" (Deposition Transcript of Officer Jennifer Morgan) at p. 35, line 15-25; p. 36, lines 1-25; and p. 37, line 1.

93 Docket No. 52-1 citing Docket No. 52-9, Defendants' Exhibit "H" at p. 2.

94 Exhibit "I" (Video Recording from the vehicle of Officer Douglas Greene produced by Defendants in their Initial Disclosures as Disc 6 of 18) at 7:27:50 p.m. through 7:27:58 p.m. (6:35 minutes through 6:43 minutes into the video recording).

95 *Id* at 7:28:00 p.m. through 7:28:48 p.m. (6:45 minutes through 7:33 minutes into the video recording).

96 *Id*.

97 Defendants' Exhibit "F-1" at 7:27:54 p.m. through 7:28:05 p.m. (11:52 minutes through 12:03 minutes into the video recording).

from the video recorded from Gonzales' vehicle from 7:27:54 p.m. through 7:28:05 p.m. (11:52 minutes through 12:03 minutes into the video recording).[98] Moreover, this is unfortunately but ultimately consistent with the officers' jovial demeanor, conversation, and conduct as previously discussed.[99; 100]

"Defendants' Version" states that Arredondo noticed Jesse Aguirre's lips were blue but was **not** *concerned because Arredondo has seen people on drugs with blue skin before* (emphasis added).[101] Amazingly, "Defendants' Version" asserts this equivocation but simply **omits** that Arredondo did not convey the fact that she observed Jesse Aguirre's lips to be blue to any other officer present, to Juarez, a tactical medic and licensed EMT, nor to fire department or EMS.[102] In fact, Arredondo did not even mentioned that she observed Jesse Aguirre's lips being blue until she wrote it in her sworn statement.[103] Further, even though Arredondo apparently didn't feel this was important in indicating Jesse Aguirre was in medical distress, Morgan and Gonzales both thought it was.[104] The Corporate Representative for the City of San Antonio on tactical medical issues, Officer Dezi Rios, also testified that blue lips indicates poor profusion and that the person is not getting *enough* or *adequate* oxygen to that part of the body (emphasis added).[105]

---

98 *Id*.

99 Defendants' Exhibit "F-1" at 7:25:53 p.m. through 7:26:11 p.m. (9:51 minutes through 10:09 minutes into the video recording); at 7:27:51 p.m. through 7:28:13 p.m. (11:49 minutes through 12:11 minutes into the video recording); and at 7:28:54 p.m. through 7:29:01 p.m. (12:52 minutes through 12:59 minutes into the video recording).

100 Defendants' Exhibit "E-1" at 7:25:42 p.m. through 7:25:57 p.m. (11:37 minutes through 11:52 minutes into the video recording); at 7:26:16 p.m. through 7:26:45 p.m. (12:11 minutes through 12:40 minutes into the video recording); and at 7:27:14 p.m. through 7:27:30 p.m. (13:10 minutes through 13:25 minutes into the video recording).

101 Docket No. 52-1 citing Docket No. 52-5, Defendants' Exhibit (Affidavit of Officer Bettina Arredondo) "D" at p. 3.

102 Exhibit "J" (Deposition transcript of Officer Bettina Arredondo) at p. 49, lines 9-25; and p. 50, lines 1-16.

103 *Id* at p. 60, lines 24-25; p. 61, lines 1-14; and Exhibit "G" (Sworn Statement of Bettina Arredondo) at p. 2; Exhibit "H" (Deposition Transcript of Officer Jennifer Morgan), p. 77, lines 20-25.

104 Exhibit "H" at p. 98, lines 15-25, and p. 99, line 1; and Exhibit "B" (Deposition Transcript of Officer Christina Gonzales) at p. 66, lines 4-17.

105 Exhibit "K" (Deposition Transcript of Officer Dezi Rios – Corporate Representative for the City of San Antonio

"Defendants' Version" next states that at no point did any of the officers believe that Jesse Aguirre was having trouble breathing nor in any sort of medical distress and that Jesse Aguirre never indicated he was in any sort of medical distress.[106] Again, this is an **outright misrepresentation** as Jesse Aguirre clearly was in medical distress as indicated by his multiple cries in agony as previously discussed.[107] Further, this is contradicted by Gonzales' own testimony stating that she told the dispatcher to inform the supervisor that they were going to get off the freeway so *EMS could check on Mr. Aguirre* and this can be seen and heard on the video recording from her vehicle at 07:21:30 p.m. (emphasis added).[108] This is before the officers realized Jesse Aguirre went unresponsive and stopped breathing and *before the officers actually called EMS* to come check on Jesse Aguirre.[109] This is clearly seen and/or heard on the video recorded from Gonzales' vehicle from 7:27:46 p.m. through 7:27:59 p.m. (11:44 minutes through 11:57 minutes into the video recording), heard on the video recorded from Morgan's vehicle from 7:27:17 p.m. through 7:27:46 p.m. (13:12 minutes through 13:42 minutes into the video recording), and the time EMS actually received the call for Jesse Aguirre is clearly reflected as

---

on tactical medical issues), p. 38, lines 13-25, and p. 39, lines 1-9.

106 Docket No. 52-1 citing Docket No. 52-5, Defendants' Exhibit "D" (Affidavit of Officer Bettina Arredondo) at p. 4; Docket No. 52-6, Defendants' Exhibit "E" (Affidavit of Officer Jennifer Morgan) at p. 5; Docket No. 52-7, Defendants' Exhibit "F" (Affidavit of Officer Christina Gonzales) at p. 5; Docket No. 52-8, Defendants' Exhibit "G" (Affidavit of Officer Roberto Mendez) at p. 5; and Docket No. 52-9, Defendants' Exhibit "H" (Affidavit of Officer Benito Juarez) at p. 3.

107 Defendants' Exhibit "F-1" (Video Recording from Officer Christina Gonzalez's vehicle) at 7:22:28 p.m. through 7:23:39 p.m. (6:25 minutes through 7:36 minutes into the video recording), and at 7:23:42 p.m. through 7:23:52 p.m. (7:39 minutes through 7:49 minutes into the video recording); and Defendants' Exhibit "E-1" (Video Recording from Officer Jennifer Morgan's vehicle) at 7:23:32 p.m. through 7:23:42 p.m. (9:24 minutes through 9:35 minutes into the video recording).

108 Docket No. 52-7, Defendants' Exhibit "F" (Affidavit of Officer Christina Gonzales) at p. 4.

109 Defendants' Exhibit "F-1" (Video Recording from Officer Christina Gonzalez's vehicle) at 7:27:46 p.m. through 7:27:59 p.m. (11:44 minutes through 11:57 minutes into the video recording); Defendants' Exhibit "E-1" (Video Recording from Officer Jennifer Morgan's vehicle) at 7:27:17 p.m. through 7:27:46 p.m. (13:12 minutes through 13:42 minutes into the video recording); and Exhibit "L" (EMS Patient Care Report produced by Defendants in their Initial Disclosures as Aguirre-EMS Reports) at p. 1 and p. 6.

19:27 (7:27 p.m.) on the EMS Patient Care Report.[110] Further, to state that Jesse Aguirre was not

in medical distress **contradicts** the officers' own training regarding officers recognizing excited

delirium which is then treated as a medical emergency and EMS should be called as indicated by

the Corporate Representative for the City of San Antonio on excited delirium, Officer Jon Sabo

who also is the instructor for the training course on excited delirium at the San Antonio Police

Department Academy.[111] Further, this is consistent with Gonzales' own testimony in which she

states that excited delirium *is* a medical emergency and EMS should be *immediately* called for

someone suffering from excited delirium (emphasis added).[112]

       "Defendants' Version" then strangely asserts that **no one** was on Jesse Aguirre's back or

in any way obstructing his airway.[113] As previously discussed this is clearly contradicted by the

video recording from Gonzales' vehicle [114] and further contradicted by Defendants own

Appendix in which they state, "Officer Mendez had his right knee on the lower left side of

Aguirre's **back** holding him down (emphasis added)."[115] Additionally, Jesse Aguirre's airway

was obstructed by the cement pavement and his trouble breathing was due to the position, force,

and weight of the officers' restraint.[116]

---

110 *Id.*
111 Exhibit "M" (Deposition Transcript of Officer Jon Sabo – Corporate Representative for the City of San Antonio on excited delirium) at p. 54, lines 19-25, p. 55, lines 24-25, and p. 56, lines 1-6.
112 Exhibit "B" (Deposition Transcript of Officer Christina Gonzales) at p. 102, lines 4-11.
113 Docket No. 52-1 citing Docket No. 52-5, Defendants' Exhibit "D" (Affidavit of Officer Bettina Arredondo) at p. 4; and Docket No. 52-7, Defendants' Exhibit "F" (Affidavit of Officer Christina Gonzales) at p. 5.
114 Defendants' Exhibit "F-1" (Video Recording from Christina Gonzales' vehicle) at 7:22:28 p.m. through 7:27:51 p.m. (6:25 minutes through 11:49 minutes into the video recording), at 7:23:18 p.m. through 7:23:39 p.m. (7:15 minutes through 7:36 minutes into the video recording), at 7:22:44 p.m. through 7:23:26 p.m. (6:41 minutes through 7:23 minutes into the video recording) at 7:23:34 p.m. through 7:24:50 p.m. (7:31 minutes through 8:40 minutes into the video recording), at 7:25:08 p.m. through 7:27:51 p.m. (9:05 minutes through 11:49 minutes into the video recording), at 7:23:42 p.m. through 7:27:51 p.m. (7:39 minutes through 11:49 minutes into the video recording), and at 7:23:42 p.m. through 7:24:23 p.m. (7:39 minutes through 8:21 minutes into the video recording).
115 Docket No. 52-1 (Defendants' Appendix) at p. 14, lines 9-10.
116 Defendants' Exhibit "F-1" (Video Recording from Christina Gonzales' vehicle) at 7:22:28 p.m. through 7:27:51 p.m. (6:25 minutes through 11:49 minutes into the video recording), at 7:23:18 p.m. through 7:23:39 p.m. (7:15 minutes through 7:36 minutes into the video recording), at 7:22:44 p.m. through 7:23:26 p.m. (6:41 minutes through

"Defendants' Version" asserts that the Bexar County Medical Examiner's Office (hereinafter "BCMEO") concluded that Jesse Aguirre died from excited delirium associated with cocaine and ethanol intoxication.[117] Curiously, "Defendants' Version" **omits** the complete conclusion of BCMEO in which they also conclude, "Due to restraint by police, this case is classified as homicide."[118]

---

7:23 minutes into the video recording) at 7:23:34 p.m. through 7:24:50 p.m. (7:31 minutes through 8:40 minutes into the video recording), at 7:25:08 p.m. through 7:27:51 p.m. (9:05 minutes through 11:49 minutes into the video recording), at 7:23:42 p.m. through 7:27:51 p.m. (7:39 minutes through 11:49 minutes into the video recording), and at 7:23:42 p.m. through 7:24:23 p.m. (7:39 minutes through 8:21 minutes into the video recording).
117 Docket No. 52-1 citing Docket No. 52-13, Defendants' Exhibit "L-15" (Records from the Bexar County Medical Examiner's Office) at p. 16 of Defendants' Exhibit "L".
118 *Id.*